# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

                                  **Case No. 06-20137**

**v.**

                                  **DENISE PAGE HOOD**

**YOUSEF SAFIEDINE,**

      **Defendant.**

_____/

## MEMORANDUM OPINION AND ORDER
### REGARDING DEFENDANT'S MOTION FOR NEW TRIAL AND
### JUDGMENT OF ACQUITTAL
### AND
### MOTION FOR COMPETENCY HEARING

## I.      BACKGROUND

Defendant Yousef Safiedine brought his Motion for New Trial and Judgment of Acquittal filed, February 8, 2008, following the Court's oral findings of fact and conclusions of law, read into the record on January 11, 2008. Defendant supplemented his Motion on March 21, 2008, following the Forensic Psychological Evaluation of Yousef Safiedine ordered by the Court for the purposes of sentencing and Dr. Steven R. Miller's letter to the Court regarding the competency of Defendant Safiedine to Stand Trial. The Government filed an Answer on June 17, 2008. On March 21, 2008, Defendant filed his Motion for a Competency Hearing and the Government filed an Answer on May 5, 2008. The Court orally granted the Motion for a Competency Hearing and heard the testimony of Dr. Miller on June 19, 2008, that date having been a date set for sentencing of Defendant Safiedine. Oral argument on the Motion for New Trial and Renewed Motion for Judgment of Acquittal was held on July 3, 2008.

Defendant lists a number of erroneous findings of fact and conclusions of law by the Court:

1.  That the Court erred when it "failed to draw the inference that failure to provide Form 1099 to Defendant is consistent with a good faith but erroneous belief as to the amount that was taxable;"

2.  That the Court erred by finding that "the failure to be supplied with a Form 1099 demonstrated knowledge and willfulness;"

3.  That the Court erred in finding that "no gift tax returns were filed by the payors of the money" and the that failure to file such "is another badge of intent or knowledge; proving criminal intent;"

4.  That the Court erred in failing to infer from the absence of written lease agreements covering the amount of the rent, that this absence supported his good faith belief, however, unreasonable, that there was nothing to inform him about what amounts were rent and what was family support;

5.  That the Court erred in finding that since there was no indication on any check paid to Defendant's wife as to what they were for, no Form 1099s, no written lease, all these facts corroborated Defendant's good faith belief, however unreasonable, that some of the money was a gift of family support;

6.  That the Court, when noting it was unusual for rent and family gift support to be in a corporate check which included lease payments, erred by not noting that these were closely held family corporations, that Defendant was estranged from his family; and that there was no contradictory evidence that supported anything other than Defendant's testimony about what he believed was rent and what was not rent;

7.  That the Court failed to infer a lack of criminality or to infer a good faith belief, however unreasonable, from Defendant's interaction or lack thereof over a ten year period with his tax preparer and failed to infer an inconsistency from the fact that the tax preparer never prepared any financial statements of business returns given that the Court found Defendant to be a sophisticated businessman.;

8.  That the Court erroneously credited the biased testimony of IRS Agents Ramos and Cummings, by not considering their testimony that Defendant was "acting crazy", yet they never inquired as to why his statements seemed "crazy" or why he was "living" in his

basement and that his success in business had occurred over 25 years earlier than the tax obligations that are the subject of the Indictment;

9. That the Court erred in finding that Defendant was a sophisticated businessman for numerous reasons, including a misconception regarding Defendant's credibility;

10. That the Court erred by failing to appreciate Defendant's mental illness and that the Defendant was "persuaded" to excuse himself from the courtroom during Dr. Clark's testimony "to avoid angry and quarrelsome reaction" during this testimony;

11. That the Court erred in finding that Defendant was a successful businessman based on his actions during the prior litigation with the IRS and the Tax Court;

12. That the Court erred when it "failed to appreciate" Defendant's consistent testimony regarding his good faith belief, however unreasonable, that he received $12,000.00 rental income and the remainder of the money in the corporate checks were family gifts, especially considering all the other testimony regarding these amounts;

13. That the Court erred when it found credible the answers of Defendant based on cross examination by the Government's attorney, and that the Court failed to consider Defendant's mental illness when determining this credibility issue;

14. That the Court erred in determining the credibility of Mrs. Safiedine based upon the Court's "cultural disconnect" regarding the "expected" and "cultural norm" of the female in an Arabic household; that the Court erred in crediting Mrs. Safiedine's testimony in light of her interest in avoiding "belligerent and antagonistic confrontation", all especially in the Court's determination that Mrs. Safiedine accepted her husband's statements that the corporate checks represented both rent and family gifts;

15. That the Court erred in finding that Defendant received consistent support from his family and from Mrs. Safiedine's family other than the monthly corporate checks;

16. That the Court erred in finding that Defendant could not respond to whether treating the excess money over the rent amount as a gift had any tax benefit to his brother and that this supported criminal

intent;

17. That the Court erred by misapplying *Cheek v. United States* (and not following *United States v. Cohen*) regarding the diminished capacity defense, by misunderstanding and applying Dr. Clark's testimony which does not support a conclusion that Defendant actually lacked mens rea at the time of the offense, based on his mental condition, rather the Court should have focused on "whether or not Defendant subjectively believed, however irrational or delusional his belief system was, that he was receiving an amount of rental income each month different than the actual checks";

18. That the verdict was against the weight of the evidence, even accepting all inferences in favor of the Government;

19. That a new trial or reopening of the record to show there were no significant gifts from other family members, that the Defendant existed in an "atmosphere of financial chaos during the years involved", and that he was not a successful businessman and had failed miserably in the United States Tax Court.

For all of these reasons and for reasons based upon Dr. Steven Miller's Forensic Psychological Evaluation of Defendant Safiedine, rendered at the request of the Court for sentencing purposes (Supplemental Memorandum in Support of Defendant Yousef Safiedine's Motion for New Trial and Renewed Motion for Judgment of Acquittal After Return of Verdict, filed March 21, 2008), Defendant requests a new trial or acquittal.

The Government responded to the Defendant's Motion for New Trial. The Government argues that factual findings must stand unless found to be clearly erroneous, citing *United States v. Marley,* 549 F.2d 561 (8th Cir. 1977), and that the evidence and inferences therefrom must be construed in the light most favorable to the Government. *United States v. Reed,* 821 F.2d 322, 324-25 (6th Cir. 1987). The Government argues that it was appropriate for the Court to consider the lack of Form 1099 in determining that the Government had shown that certain portions of the corporate checks to Defendant were not gifts. The Government also argues that the fact there was no written

lease and no purpose indicated on the checks also supports the Court's factual finding. The Government asserts other findings were in the purview of the Court to determine, as finder of fact in a bench trial, based upon the credibility of the witnesses and the weight to be given to each witness's testimony, including: the testimony of Agents Cummings and Ramos; the fact of no written lease; the lack of communication with the tax preparer; evidence regarding the success of Defendant as a businessman; the testimonies of Defendant and his wife and the consistency of their individual testimonies; Defendant Safiedine's lack of knowledge of tax benefits; testimony or lack thereof supporting the fact of other family gifts or support; and the testimony of Dr. Clark, the expert witness. The Government claims none of the Court's findings are clearly erroneous, but that Defendant, through counsel, seeks the Court's acceptance of his own "interpretation" of the evidence. The Government argues this is not enough for a new trial.

## II.     ANALYSIS

### A.     Claimed Erroneous Findings of Fact

#### 1.     Failure to Receive Form 1099

The Government introduced evidence that no IRS Form 1099s were received by Defendant Safiedine.  This evidence was introduced to counter Defendant's claims that money received from the company owned by his brother was partially rental income and partially a gift. The Government argued that, since no Form 1099s were received by Defendant, there was no way of knowing what portion of the money Defendant received was designated as a gift and what was rental income. If Form 1099s had been received, it would have been possible to document the amount of rental income. The Government had the burden of proving that Defendant did not report the appropriate amount of income on his tax returns and the Court reasonably could consider that the amounts

received on a corporate check, which Defendant conceded included rental income, may constitute reportable income, not gifts. The Court continues to find the Government met its burden.

### 2. Payors' failure to file Gift Tax Returns

Similarly, the Court reasonably considered evidence that the payors of money to Defendant filed no gift tax returns. It is clear that the responsibility to file such a return is that of the payor and not Defendant. However, the Court could consider this evidence as an indication that the money was not meant as a gift or, had such returns been filed, that the money was a gift. The Government was in the position of "proving a negative", meaning that the Government was required to show no gift tax return had been filed to respond to an argument that it had not been shown that no gift tax return had been filed and so the Court could not assume there had been no showing that the payor intended it as a gift. While Defendant would not have known whether a gift tax return had been filed, such evidence lends support to a finding that the money was not intended as a gift. Defendant, however, is correct because Defendant would not have been privy to such a filing and the lack of such a filing could not be used to show Defendant's criminal intent. However, there is sufficient other evidence, such as the fact that the monies were paid by corporate check, supporting Defendant's criminal intent.

### 3. Lack of a Written Lease

The Defendant claims the Court failed to comment on the importance of the lack of a written lease, even though the Court mentioned the lease in its oral findings several times. The Defendant asserts the "logical" conclusion the Court should have drawn was that as there was no lease, there was nothing to contradict Defendant's belief that the money he received each month was both rental income and support from his family. To the contrary, the testimony and evidence showed that the

family company originally paid a certain amount per month for the gasoline station, that at a certain point the amount increased and was paid consistently by corporate check, that no notation indicated that the increase was family support and that it appeared to be a rental increase. The Defendant only seeks to have the Court find an inference from this testimony and evidence that supports Defendant's defense. The Court, as the trier of fact, is free to make all reasonable inferences based on the testimony and evidence presented. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

### 4.     Failure to note the purpose of the payments made

Defendant also claims that the Court indicated there was no indication on the checks as to their purpose and made no connection between this lack of notation and its findings. Defendant further asserts that the Court should have reached the "logical" conclusion that, because these checks were from a closely-held family business, that fact corroborated Defendant's claim that certain amounts of checks were gifts from his family. Coupled with the IRS agent's testimony that it was unusual for a corporation to include gifts in rental payment checks, the fact of no written lease, the consistency of the payments and the fact that it was by corporate check, the Court was not clearly erroneous in determining that the amount Defendant claimed to be gift income was not a belief, however unreasonable, but strongly held by Defendant. No documentary evidence in the record supports a finding that Defendant believed these corporate checks included a monetary gift.

### 5.     Lack of Contact with the Tax Preparer

Defendant claims the Court found from the testimony of Judith Russo, the tax preparer for Defendant, that she had no contact with the Defendant for over ten years. In fact, the testimony is unrefuted that Defendant and Ms. Russo only spoke by telephone for over ten years. The Court agrees with Defendant's characterization of this as "odd behavior" on the part of both the tax

preparer and Defendant, but not with Defendant's assertion that it is indicative of lack of criminality. Defendant's cavalier reporting of the same amount as income each year, without documentation could as easily be viewed as evidence of criminal intent to under-report his true income. Once again Defendant merely seeks to have the Court draw an inference in his favor. Defendant also states that the Court noted that Defendant never employed Ms. Russo to prepare financial statements or other tax returns. Defendant argues that this is inconsistent with the Court's finding that Defendant was a sophisticated businessman. However, an inference that Defendant did not have his personal tax preparer prepare any business or financial statements is not inconsistent with a finding that Defendant was intentionally under-reporting his income and limited the information his personal income tax preparer received to avoid presenting supporting documentation or to avoid questions by the preparer.

### 6.       Institutional Bias and Perspective of Government Agents

The Court, sitting as the trier of fact, is required to weigh the evidence and make decisions regarding the credibility of the witnesses and the weight to be given to their testimony. *Jackson,* 443 U.S. at 319. Defendant argues that the Court erred by failing to address the credibility and bias of the government agents testifying at trial. It is true that neither agent had any training in mental health and failed to investigate the mental health of the Defendant after hearing his "preposterous" story or learning that he was estranged from his family and purportedly a recluse. The Court was aware that the Defendant's business success had occurred in the past and that at the time of the offenses charged he was not employed and estranged from his family. However, testimony also showed that Defendant played golf with others, traded, however, allegedly unsuccessfully, and interacted enough to know to respond to the tax preparer, to know that there was a difference in the

amount of income he received from his brother's company over the years, and to have the checks issued to his wife. Defendant also knew he had been sued previously, attempted to have his wife disassociated from his prior tax liability, and responded clearly to the questions posed by Government's counsel. The Court found the testimony of the government agents credible in the context of the mental health issues raised by the defense at the time of trial. These witnesses were not qualified to judge the mental state of the Defendant or to determine whether he was malingering.

### 7. Defendant as a sophisticated businessman

The testimony at trial supports a finding that Defendant was a successful businessman. He rose from work in a factory to be the owner and operator of many successful gasoline stations and is regarded as a pioneer in the self-serve-convenience-store gasoline station. Even after allegedly suffering from delusions, he had been successful enough to retain at least one gasoline station from which he continues to receive substantial rental income. This information was evidence the Court could consider in weighing the credibility of the Defendant and in deciding whether he had the requisite criminal intent or criminal state of mind to commit these offenses.

The assertion that Defendant has not been actively in business for twenty-five years, but still describes himself as a businessman may go to his mental state (which the Court will address later). However, Defense Counsel's description of Defendant as a recluse is not fully supported by clear evidence. The testimony also showed that, while Defendant may not know or socialize with his neighbors, he goes golfing with friends and day trades on his computer (even though such trading may not be profitable and may cause him to be in debt). Defendant notifies his tax attorney of the need to file his income tax return and attempts to protect his rental income by having it directed to his wife. The Court's finding that Defendant is a successful businessman is not erroneous, but based

on evidence presented at trial. Defendant's argument is again based on inferences Defendant would like the Court to draw from the testimony at trial.

### 8.    Court's Misunderstanding of Defendant's Self Image

Defendant argues that the Court failed to appreciate that Defendant attempts to show himself in the best light were manifestations of his mental illness. Defendant claims the Court should have seen that Defendant was asked to excuse himself from the courtroom during the testimony of Dr. Charles Clark to prevent "potentially angry outbursts" during the testimony and to "avoid angry and quarrelsome reaction" by Defendant to the testimony of his true mental state. Defendant asserts that the failure of the Court to so find was clearly erroneous. The Government argues that Defendant's projection of a positive self image is not relevant or material.

Defense Counsel asked the Court to allow the Defendant to be excused from the courtroom during this testimony.  It was not clear that it was because of the potential of angry outbursts. Nonetheless, Defendant's self image was not at the time of trial an issue for the Court since Defense Counsel had indicated to the Court that there was not an issue relative to Defendant's competency to stand trial, but only an issue of Defendant's capability to form the requisite intent to commit the crime charged.  At the time of trial, Defendant's self image was not relevant.  In any event, the Court considered the testimony of both Dr. Clark and Defendant and appropriately judged the credibility and weight of their testimonies.

### 9.    Conclusions Regarding Litigation Success

Defendant argues that the Court erroneously made the "apparent" finding that Defendant had successfully managed the civil litigation brought against him by the IRS in district court and the Tax Court.  The Court noted in its oral decision that Defendant Safiedine had been faced with tax

10

problems before, had astutely protected some of his gas stations from seizure for non-payment of back taxes, had attempted to file a non obligated spouse form to protect his spouse's income or possible tax refund from seizure for back taxes. All of this was in support of the Court's decision that Defendant Safiedine did not have a "good faith" belief that the amounts sent by check to Nahla Safiedine and her son constituted a lease payment of $12,000.00, the reminder being a gift from relatives. The Court stated these facts not to show that Defendant had "litigation success", but to show that Defendant was familiar with the payment of taxes and potential ways of protecting assets from tax liability. All of this the Court found relevant to a demonstration of "good faith belief" regarding whether the sums paid to the Safiedines were lease income or gifts. The Government points out that in a least one criminal tax case, the Defendant, representing himself, was acquitted, while his co-defendants were not.

### 10.    Consistency of Defendant's Testimony

The Court, sitting as the trier of fact is entitled, like a jury, to judge the credibility of the witnesses and the weight to give to the testimony of each witness. The Court is entitled to believe all, some, or none or any witness' testimony. Unlike the jury, the Court must announce its findings of facts and conclusions of law on the record and/or in writing.  In this case, the Court was fully aware that Defendant Safiedine testified he told the tax preparer a portion of the checks he received from his family's company was rental income and a portion was a gift. This same story was told to the federal agents and to the Court. The testimony was supported by the witnesses who testified that Defendant told them the same story. The story is consistent. This supports Defense Counsel's argument that Defendant wanted to cast himself in a good light.  However, the Court is charged with determining whether the story is truthful to ascertain whether  Defendant held a good faith belief,

11

however unreasonable, that portions of the payments from JLJ or MTK corporations were gifts. The Court is also permitted to consider whether Defendant's assertion is credible. That Defendant repeated the same story to the Court and a number of witnesses, who also corroborated that he had made the same statements to them, does not necessarily make Defendant's story credible. The Court, based on the evidence presented, including the testimony of Defendant, did not find that such consistency led to the credibility of the Defendant's story or that it supported a finding that Defendant in good faith, however unreasonable, believed the payments from the family corporations were lease payments and gifts.

### 11. Findings Regarding Defendant's Credibility

The Defendant argues that the Court erroneously relied on the answers of Defendant to questions on cross examination to support its finding that Defendant had the requisite criminal intent to commit the crime alleged. Defendant claims the Government asked shorter questions and questions geared to "feed into Safiedine's delusions of success and grandeur, fueled by his mental condition." Defendant claims Dr. Clark's testimony regarding Defendant's short attention span supports his argument. Defense Counsel claims Defendant's isolation from his neighbor's tragedy and criminal acts as well as his disconnection from the world around him render the Court's decision regarding criminal intent clearly erroneous. Defendant's lack of interest in his neighbors alone or even coupled with a general lack of interest in other people does not relieve him of the ability to possess the required level of intent. Defense Counsel writes, "That someone could be that disconnected to the world around him and still be found to possess criminal intent is a clearly erroneous finding." Defense Counsel provides no support in law for that statement. From his statement it would naturally follow that no "recluse" or socially isolated individual could ever be

responsible for criminal intent. Defendant presents no support for this in the law.

### 12.    View of Mrs. Safiedine

Defense Counsel argues that the Court expressed "skepticism" regarding the testimony of Mrs. Safiedine and that this skepticism is the product of "cultural disconnect." Defense Counsel knows little, beyond the obvious, of this Court's cultural connections. The Court is hard pressed to understand how Defense Counsel could presume the Court knows nothing of "cultural norms" that might impact family lifestyle or "cultural norms" of Arabic or any other ethnic households. Nothing in this Court's findings supports any bias or lack of understanding on the part of the Court on any issue of ethnicity that could be appropriately considered by the Court. The Court did note in its findings that Mrs. Safiedine's demeanor on the witness stand and her testimony did not appear deferential or anxious, a finding the Court may appropriately make in determining credibility. It was Mrs. Safiedine's claim that she deferred to her husband and was anxious at the visit of the IRS to their home. However, she presented as neither anxious nor deferential as she testified as a witness. It should be noted Mrs. Safiedine admitted on the stand that she falsely stated her occupation on a credit application. She downplayed the value of her home and the property values in her neighborhood. Mrs. Safiedine could not give any reason for the differing amounts of the checks she received and never indicated that any family member told her the excess money in the checks was a gift.

The Court would note again that credibility findings are within the purview of the Court sitting as a trier of fact. *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 492 (6th Cir. 2005) ("When the factual findings involve credibility determinations, we afford great deference to the district court's factual findings.") *Taylor Steel, Inc. v. Keeton,* 417 F.3d 598, 604 (6th Cir. 2005).

("Great deference is demanded when the factual findings required the judge to make credibility determinations.") *See also, U.S. v. Peyton*, 183 Fed. Appx. 539, 552 (6th Cir. 2006)("[A]ppellate courts do not re-weigh the evidence or judge the credibility of witnesses, and draw all inferences in favor of the finder of fact.").  Defense Counsel's unsupported argument regarding the basis for the Court's finding of credibility (or lack there of) of Mrs. Safiedine's testimony, is woefully unsupported by the record and his argument is completely meritless.

### 13.     Erroneous Conclusions Regarding Other Family Gifts

The Defendant argues that the Court's finding that Defendant and his wife received "consistent gifts from relatives, other than monies from the family corporations" is not "corroborated."  The testimony of both Defendant and Mrs. Safiedine support a finding that the relatives of the Safiedines supported them with monetary gifts and loans.  In any event, that finding of the Court even if erroneous, is not such as to warrant a new trial or judgment of acquittal.

### 14.     Defendant's Tax Knowledge

Defendant argues that the Court's finding that Defendant could not articulate whether there was a tax benefit to his brother, if $6,000.00 was treated as a gift, was not evidence of criminal intent. The Court noted Defendant's failure to answer this question and that he thereafter resorted to his story about the Sun Oil Company. The Court did not state it found this testimony to be any evidence of criminal intent. Nothing was implied in this Court's noting of Defendant's testimony. Whether the Court should have considered it as evidence of Defendant's lack of business acumen or lack of tax knowledge is pure argument.

### B.     Claimed Errors of Law

### 1.     Misapplication of *Cheek v. United States* in the Context of the Diminished Capacity Defense

14

Defendant claims the Court "missed" the central focus of Dr. Clark's opinion that "Defendant's delusional thinking pattern caused him to become fixated upon a certain belief system, however irrational or unsupportable, or illogical to outside observers." Defendant claims what was at issue was the effect of his delusional thinking upon his action. Defendant argues that *Cheek v. United States*, 498 U.S. 192 (1991) controls. This Court agrees. A subjectively held belief, however irrational or illogical, may negate specific intent to commit the crime. *Id.* at 201.

Defendant argues that this pattern of delusional behavior caused him to believe he was owed a billion dollars from Sun Oil Company and also caused him to believe monies received from his brothers each month were part lease and part gift. The Government argues that Defendant is challenging a factual finding of the Court, not a misapplication of *Cheek*.

The Court agrees that some delusional behavior on the part of Defendant has been demonstrated. However, the Court did not find that Defendant's delusional behavior extended to a belief (rational or irrational, illogical or not, strongly held or not) on the part of the Defendant that the money received from his brothers' companies was part lease income and part gift. Dr. Clark's opinion and testimony did not rule out Defendant's ability to commit a criminal act with the required intent nor that Defendant did not understand that treating a part of the lease payments as a gift would have a tax advantage. Defendant's understanding of his acts and the consequences thereof could be considered as evidence of willfulness and the intent required to commit the crimes alleged. Dr. Clark's opinions did not rule out the state of mind required under the statute.

## 2. Verdict Against the Great Weight of the Evidence

Defendant claims he is entitled to a judgment of acquittal under Fed. R. Crim. P. 29. He claims there is insufficient evidence to support his conviction. To support a motion for judgment

of acquittal, the Court must consider, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caseer*, 399 F.3d 828, 839-40 (6th Cir. 2005). Of course, defense counsel notes, "when the facts are properly found" the evidence will not support conviction. However, viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence on every element of the crimes charged for a "rational" trier of fact to find guilt beyond a reasonable doubt.[1]  The Court finds Defendant is not entitled to a judgment of acquittal after the Court's finding of guilt.

### C.    New Trial or Reopening of the Record Required/Competency

Defendant argues that the Court should allow a new trial under Fed. R. Crim. P. 33 or reopen the record to allow evidence that:  there were no other significant gifts from family members to the Defendant during the time period alleged in the Indictment; Defendant "existed in an atmosphere of financial chaos during the years involved"; Defendant failed miserably in representing himself before the United States Tax Court.  Defendant asserts it would be an abuse of discretion if the Court did not grant a new trial under the circumstances, as the interest of justice so requires.  No new trial or reopening of the record is required for these reasons.  There is testimony that supports Defendant and his wife received other gifts and loans from their relatives. That Defendant existed in what could be characterized as an "atmosphere of financial chaos" could be supported by the record as it

---

[1] Defense Counsel states, "There is a natural human bias against those with mental illness or oddity, compelling conformity to societal norms" seeming to imply some bias not supported by any comments of this Court or known to have been made by the prosecution on or off the record. The Court is unclear whether this is just another argument that the Court made erroneous findings or findings at least contrary to the Defense Counsel's view of the facts and inferences to be drawn therefrom.  Such unsupported implications are lacking in civility and have no place in arguments to the Court.

currently exists. Whether or not Defendant miserably represented himself before the Tax Court can also be gleaned from the record as it stands.

Here, the Court finds it is compelled to address the merits of Defendant's Motion for Competency Hearing. Defendant brought this motion at the time of sentencing. Prior to sentencing, the Court entered an order requiring Defendant to undergo a psychological evaluation to assist the Court at sentencing. Dr. Steven R. Miller, Ph.D., LP issued a Forensic Psychological Evaluation of Mr. Safiedine. Dr. Miller also directed a letter to the Court regarding Defendant's Competency to Stand Trial and also his competency to "stand sentencing." In this letter, Dr. Miller reiterates (from his forensic report) that "Mr. Safiedine suffered from a significant diminished capacity at the time of committing these offenses ...," recommending a downward departure from the advisory sentencing guidelines. In addition, Dr. Miller thought it his duty to inform the Court of his opinion that Defendant failed that part of the test for competency which requires the court to determine, "... whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." 18 U.S.C. § 4244. Dr. Miller went on to opine:

> In my opinion, Mr. Safiedine **fails this test** inasmuch as he was not able to consult with this examiner about his case with anything approaching a "rational understanding" of what he has been charged with, and, plainly, he does not have a rational or a factual understanding of what is actually happening with respect to the proceedings against him.

February 10, 2008 Letter from Dr. Miller. Dr. Miller finally opines that Defendant Safiedine is "presently not competent to stand sentencing."

Defendant argues correctly that the issue of competency may be raised any time prior to sentencing.18 U.S.C. § 4241(a). Defendant also correctly states the test for determining

competency.

> ... The Court shall grant the motion [for a determination of competency]... if there is a reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

A criminal defendant is incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or if he does not have "a rational as well as factual understanding of the proceedings against him." *United States v. Miller,* 531 F.3d 340, 348 (6th Cir. 2008) (citing *Drope v. Missouri,* 420 U.S. 162, 172 (1975)). In itself, the mere presence of a mental disease or defect is not sufficient to render a defendant incompetent under the standard set forth in 18 U.S.C. § 4241. *United States v. Liberatore,* 856 F. Supp. 358, 360 (N.D. Ohio 1994). To sustain his burden under Rule 33 for a new trial based on newly discovered evidence, a defendant must offer newly discovered evidence that he suffers from a mental disease or defect and evidence indicating that the disease or defect reduced his mental capacity to the point that he was unable to formulate a rational and factual understanding of the proceedings or consult with his attorneys with a reasonable degree of rational understanding. *Id.*

A court must look at a number of factors, including "evidence of a defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical opinion on competence to stand trial." *United States v. Leggett,* 162 F.3d 237, 242 (3rd Cir. 1998)(citing *Drope,* 420 U.S. at 180). There is no predetermined formula for making a finding of reasonable cause other than a court must simply look at the "unique circumstances" of the case. *Id.* The trial court takes into account conflicting testimony of two experts and the district court's choice between conflicting evidence is a factual finding which is subject to a clearly erroneous standard of review. *United States v. Ford,*

184 F.3d 566, 581 (6th Cir. 1999); *United States v. Branham,* 97 F.3d 835, 855 (6th Cir. 1996). A trial attorney's failure to mention the possibility of incompetence until after trial undercuts the reliability of more recent opinions that a defendant was incompetent during trial. *Ford,* 184 F.3d at 581 (citing *Owens v. Sowders,* 661 F.2d 584, 586 (6th Cir. 1981)). A counsel's opinion concerning competency is a factor a court may consider. *Owens*, 184 F.3d at 586.

Defense Counsel argues that Defendant was "clearly not competent to stand trial. ..." Yet, not once did Defense Counsel raise that issue during trial. Even when specifically asked by the Court at the beginning of trial whether there was an issue of competency to stand trial, Defense Counsel stated the defense was not raising such an issue and the only issue was whether Defendant had the requisite mental capacity to have the intent and knowledge to commit the alleged offense.

Defense Counsel, just prior to the Court rendering its oral findings of fact and conclusions of law, asked the Court to note that Defendant never conferred with Defense Counsel at their table during the trial.

> Mr. Forrest: But I would like to ask one thing before the record is completely closed in this matter.
>
> I ask the Court to reflect on what you observed during the trial in November; specifically, that during the course of the trial, I did not communicate or speak with Mr. Safiedine about any of the trial strategy or trial matters at all, nor did Ms. Patrick.
>
> I think it is that significant in this case as to his mental state and which is very close to a competency issue here, but we're not quite there. But, I wanted it to be put on the record. and I want you to - -
>
> The Court: (Interposing) You're making me a little bit nervous about that, Mr. Forrest.
>
> Mr. Forrest: But I would ask the Court to confirm that observation - -
>
> The Court: (Interposing) No, I don't think it is evidence in the case, really, Mr. Forrest, with all due respect.

19

The evidence in the case that I'm to consider is the testimony that is received from the stand and the exhibits admitted into evidence. And I don't think that, while I am entitled to take into consideration in judging the credibility of the witnesses their demeanor and manner while testifying, I don't think I'm entitled to take into consideration the interactions between you and your client relative to your trial strategy. Although I'm happy, if you have some case law to support that I should consider that, to do that.

And unless you do, I'm really a little bit reluctant to consider anything other than what any other trier of fact would consider in making that determination.

Mr. Forrest:    I just think that it's highly relevant to his state of mind, and that's all I am saying.

The Court:    And it's also much too late to ask the Court to do that.

Mr. Delonis, do you want to be heard on that?

Mr. Delonis:    No, Your Honor.

The Court:    And Mr. Forrest, I don't know whether or not you're raising any competency issue?

Mr. Forrest:    No, I'm not, Your Honor.

The Court:    Because if you are, we need to do something about that.

Mr. Forrest:    No, we're not. I'm not, Your Honor.

(Tr. of Ct. Ruling, 4:4-25, 5:1-25, 6:1-4, January 11, 2008.)

The Court also notes that Defense Counsel did state that Defendant Safiedine had conferred

with him about Defendant's decision to waive his right to a trial by jury.

The Court:    ... On November 6, 2007, he waived his constitutional right to a trial by jury and proceeded with a bench trial before this Court.

I don't know what the record will reflect about my questions about that and whether or not, Mr. Forrest, I asked Mr. Safiedine at that time whether or not he had conferred with you about his decision to waive his constitutional right to a trial by jury. That would be my normal practice, but I actually do not remember if I, in fact, asked that.

> Mr. Forrest:    Your Honor, you did.  He did consult with me on that.  I was referring to during the trial, the evidentiary part of the trial.

(Tr. of Ct. Ruling, 6:17-25, 7:1-4, January 11, 2008.)

Of course, because the Court had been assured there was not an issue of competency to stand trial, the Court did not focus on the conferences of Defendant and his counsel during trial at their table. Nor was there any way for the Court to know that Defendant Safiedine was more concerned about a golf tee time on the day of the Court's decision rendered in open court.

The Government opposes Defendant's motion. The Government notes that although Dr. Charles Clark spent considerable time evaluating Defendant and testified extensively at trial, he did not opine that Defendant Safiedine was not competent to stand trial, either in writing or from the witness stand. Of course, as Defense Counsel had indicated at the trial's inception that competency was not an issue, there was no apparent reason for the Government or for the Court to question Dr. Clark regarding Safiedine's competency to stand trial. In hindsight, the Court concludes it should not have relied upon Defense Counsel's representation to the Court.

The Government argues that nothing in Defendant's testimony or conduct at trial suggested a lack of competency. The Government asserts that even Defendant's delusional belief that Sun Oil is indebted to him is just that, a "restricted, narrow, discreet aspect of Safiedine's persona." Otherwise, the Government claims the Defendant appears capable of "functioning in a reasonable and rational manner" and "communicating with others in a lucid manner." The Government claims that all this supports a finding that there is no reasonable cause to believe the Defendant suffers from any mental problem that renders him not competent to stand trial.

The Court has already in its prior discussion regarding the credibility of Defendant Safiedine and in its written findings and conclusion discussed its view of Defendant's testimony at trial. The

Courts adopts those findings and conclusions regarding the testimony and credibility of Defendant Safiedine here. The Court has also reviewed again the testimony of persons testifying at trial, who had contact with Defendant Safiedine, in person or by telephone over a course of years, including both government witnesses and Mrs. Safiedine.

The Court finds it curious that upon the Court's finding of guilt, Defense Counsel now raises the issue of Defendant's competency to stand trial. If Defendant was not able to assist Defense Counsel at any time during trial, that issue could easily have been brought to the Court's attention.

In any event, the Court takes particular note of the findings and evaluation of Dr. Miller who, on his own initiative, brought the issue of Defendant Safiedine's competency to stand trial or to stand sentencing to this Court's attention. Dr. Miller found that Defendant suffers from a "Delusional Disorder, which significantly impairs his judgment, behavior, capacity to recognize reality and his capacity to cope with day-to-day life events." He noted that although he was not asked for an evaluation of Defendant's competency to stand trial, "this issue certainly gnawed at me throughout my examination of the defendant and it continued to vex me all the way through my composing the pre-sentencing recommendations for Your Honor."

Although Dr. Miller's report is much the same as Dr. Clark's, Dr. Clark never addresses Defendant's competency to stand trial, only whether or not Defendant had the requisite criminal intent to commit the crime alleged. Dr. Miller opined that Defendant suffers from a "longstanding, significant, mental disorder with prominent delusional features..." In his recommendation, Dr. Miller states,

> Regarding evidence of what is legally defined as a "mental illness", in my opinion, there is clear and convincing clinical evidence that defendant suffers from what is legally defined as "mental illness" and, therefore, from a significantly disabling mental/cognitive

condition.

The Court, based on the record before it, finds that there is now "reasonable cause" to believe that Defendant Safiedine may have been suffering from a mental disease rendering him unable to properly assist in his defense and therefore mentally incompetent to stand trial (or be sentenced). Accordingly, the Court grants Defendant's Motion for New Trial based on the finding that Defendant was incompetent to stand trial at the first instance.

Dr. Miller's opinion regarding sentencing was that,

> [W]ith psychiatric and psychological intervention/treatment the defendant's psychiatric condition can at least be stabilized and 'managed' adequately. Indeed, possibly, he might even be persuaded by psychiatric treatment and by taking psychotropic medications to modify his more closely held delusional beliefs, although this possibility is certainly more unpredictable for someone with this particular diagnosis.

Dr. Miller also opined that Defendant is not a significant risk for violence in the community and os treatable in a community setting. Dr. Miller further recommended that Defendant be evaluated by the Probate Court to determine his need for a guardian and prohibited from negotiating bank loans or obtaining other credit.

Pursuant to 18 U.S.C. § 4241(d), upon a finding that a defendant is mentally incompetent to stand trial, "the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility..." This seems particularly harsh in this case, where except for this criminal behavior, the Defendant does not seem a danger to himself or others. To some extent, the Defendant reasonably lives day to day without significant incident. However, the Court sees no opportunity other than that prescribed in the statute.

### III. CONCLUSION

For the reasons set forth above, the Court finds Defendant was not competent to stand trial. Accordingly,

IT IS ORDERED that Defendant's Motion for New Trial is GRANTED and the Renewed Motion for Judgment of Acquittal After Return of Verdict is DENIED. **(Doc. No. 52, filed 2/8/2008)**.

IT IS FURTHER ORDERED that Defendant's Motion for Competency Hearing **(Doc. No. 54, filed 3/21/2008)** is GRANTED, the Court having held the competency hearing.

IT IS FURTHER ORDERED that Defendant's Motion for Withdrawal of Attorney or Appoint as Continuing Counsel **(Doc. No. 61, filed 6/2/2008)** is DENIED, for the reasons set forth on the record.

IT IS ORDERED that Defendant Safiedine present himself to the local representative of the Attorney General within 30 days of the date of this order.

 

 

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: October 18, 2010

 

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 18, 2010, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager